# SUPREME COURT OF THE UNITED STATES

### BRENDA CASH, ACTING WARDEN *v.* BOBBY JOE MAXWELL

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 10–1548.   Decided January 9, 2012

The motion of respondent for leave to proceed *in forma pauperis* is granted. The petition for a writ of certiorari is denied.

Statement of JUSTICE SOTOMAYOR respecting the denial of certiorari.

The Antiterrorism and Effective Death Penalty Act of 1996 requires that federal habeas courts extend deference to the factual findings of state courts. But "deference does not imply abandonment or abdication of judicial review." *Miller-El* v. *Cockrell*, 537 U. S. 322, 340 (2003). Congress stated in no uncertain terms that federal habeas relief remains available when a state court's holding is "based on an unreasonable determination of the facts." 28 U. S. C. §2254(d)(2). In this case, the state court's denial of relief to respondent Bobby Joe Maxwell was premised on its factual finding that there was "no credible or persuasive evidence Sidney Storch lied at [Maxwell's] trial in 1984." App. to Pet. for Cert. 137. Because the Ninth Circuit meticulously set forth an avalanche of evidence demonstrating that the state court's factual finding was unreasonable, see *Maxwell* v. *Roe*, 628 F. 3d 486, 498–506 (2010), I agree with the Court's decision to deny certiorari.

Sidney Storch was one of the most notorious jailhouse informants in the history of Los Angeles County. During a 4 year period in the mid-1980's, he testified in at least a half-dozen trials, each time claiming that the defendant had confessed to him in prison. See Rohrlich & Stewart, Jailhouse Snitches: Trading Lies for Freedom, L. A. Times,

Apr. 16, 1989, p. 30 ("Said inmate Daniel Roach: 'It seems that half the world just confesses to Sidney Storch' ").

Throughout this period, however, evidence mounted that Storch repeatedly was fabricating inmates' confessions for personal gain. As even the State acknowledges, Storch's signature method was to fashion inmates' supposed confessions from publicly available information in newspaper articles. 2 Record 262. At Maxwell's postconviction hearing, one former county prosecutor explained that he declined to use Storch in a high-profile 1986 murder case after determining "Storch was not telling the truth about [the defendant's] alleged statements," and had lied about having heard a confession at a time when he was not in the defendant's cell. 9 *id.*, at 1824. Another prosecutor later refused to use Storch in a different case after discovering that his "testimony was similar to the newspaper accounts of the case." 9 *id.*, at 1825. In 1987, sheriff's deputies even confiscated a *manual* written by Storch instructing other jailhouse snitches how to fabricate confessions. None of this was out of character for Storch, who was discharged from the Army in 1964 because he was a "'habitual liar,'" and was arrested repeatedly for crimes of dishonesty, including forgery, fraud, and false impersonation—including falsely impersonating a Central Intelligence Agency officer. 628 F. 3d, at 498.

As the Ninth Circuit explained at length, both before and after Maxwell's trial, various police officers and prosecutors believed Storch to be unreliable, dishonest, and willing to set up defendants for his own ends. At Maxwell's postconviction hearing, one police officer described how Storch sought to "set . . . up" someone during a forgery investigation, 6 Record 1118; another detective testified that he would have put Storch on a Los Angeles Police Department list of unreliable informants prior to Maxwell's trial. Not long after Maxwell's trial, prosecutors refused to put Storch on the stand, believing him to have

fabricated defendants' confessions. And even the State conceded that Storch lied about a variety of material facts at Maxwell's own trial, including his own criminal record and his motivation for testifying. This powerful evidence supported Maxwell's claim that Storch falsely testified about Maxwell's supposed confession—using precisely the same *modus operandi* that Storch used time and again to falsely implicate other defendants. See 628 F. 3d, at 504–505.

The dissent labels all of this evidence "circumstantial." *Post,* at 3 (opinion of SCALIA, J.). It insists that it is possible that Storch repeatedly falsely implicated other defendants, and fabricated other material facts at Maxwell's trial, but uncharacteristically told the truth about Maxwell's supposed confession. Of course, that is possible. But it is not reasonable, given the voluminous evidence that Storch was a habitual liar who even the State concedes told other material lies at Maxwell's trial.[1]

Here, the Ninth Circuit recognized that 28 U. S. C. §2254(d)(2) imposes a "daunting standard—one that will be satisfied in relatively few cases." 628 F. 3d, at 500 (internal quotation marks omitted). The court below found that standard met only after describing, in scrupulous detail, the overwhelming evidence supporting the conclusion that Storch falsely testified at Maxwell's trial[2]—

———————

[1] The dissent suggests two police officers testified that Storch provided them "accurate and reliable information" when working with Storch several years before Maxwell's trial. See *post,* at 4. In fact, when asked if Storch provided "accurate information," one officer stated: "As far as I know, yes. I don't remember any of this being either good or bad . . . ." 6 Record 1091. The second officer, when asked if Storch was a "reliable individual," responded that "it would depend on what time," *id.*, at 1117, and noted that he had ceased all contact with Storch well before Maxwell's trial, after Storch's attempt to "set . . . up" a prospective defendant, *id.,* at 1118.

[2] The dissent implies that there was strong evidence suggesting that Storch was truthful. But the testimony by two other jailhouse inform-

attempting to manipulate the integrity of the judicial system as he did in numerous other cases. I agree with the Ninth Circuit's determination. But even to the extent that the dissent sees error in that determination, the Ninth Circuit conducted precisely the inquiry required by §2254(d)(2) and our precedents. "The principal purpose of this Court's exercise of its certiorari jurisdiction is to clarify the law." *Caperton* v. *A.T. Massey Coal Co.*, 556 U. S. 868, 902 (2009) (SCALIA, J., dissenting). Mere disagreement with the Ninth Circuit's highly factbound conclusion is, in my opinion, an insufficient basis for granting certiorari. See this Court's Rule 10.

---

ants who contended that Maxwell confessed to them, see *post,* at 4, was properly deemed "ludicrous" by the state appellate court. App. to Pet. for Cert. 174. One informant was committed to a mental hospital, and informed the district attorney before trial that his story implicating Maxwell had been "nothing more than a story of untruths founded by an 'imaginary delusion.'" Tr. 6532. The other informant claimed that Maxwell confessed to 10 murders while raping him during the middle of the day in his cell. That story was refuted by another inmate, and when the informant attempted to obtain bail on the basis of his testimony regarding Maxwell, another court denied relief. See, *e.g., id.,* at 6744–6754.

The dissent also ignores that the physical evidence against Maxwell was largely circumstantial, and that the State's prosecutor acknowledged that he had regarded the case against Maxwell as "weak from an evidential standpoint." 9 Record 1844. Three men who briefly saw the killer provided a description of a man taller and heavier than Maxwell. And when Maxwell was placed in a lineup, and made to say a remark all three men had heard the killer say, none of the three identified Maxwell. One of the eyewitnesses even stated "you got everybody up there that doesn't look anything like him." Tr. 8641A.